UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTONIO F. CARSON,

       Plaintiff,

v.

SANDRA MONROE, et al.,

       Defendants.

_____/

Case No. 2:07-cv-29

HON. GORDON J. QUIST

## REPORT AND RECOMMENDATION

Plaintiff Antonio Carson, an inmate currently confined at the Baraga Maximum
Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against
several employees of the Michigan Department of Corrections. The remaining defendants include
Nurse Sandra Monroe, Physician Assistant Richard Miller, Nurse Mandi Salmi, Nurse Ruby
Cheatham, Nurse Charles Scott, RUM Cathy Bauman, ARUS Dennis Girth, ARUS Thomas Salo,
RUM Denver McBurney and Sergeant Nowaki. Defendant Tim Bott has not been served with a
summons and complaint. Default has been entered against defendant Nowaki. Plaintiff has moved
for default judgment against defendant Nowaki. A jury trial is scheduled for November 2, 2009.

Plaintiff's complaint alleges that defendants violated his Eighth Amendment rights
by interfering with his medical treatment. Plaintiff injured his knee while getting out of bed.
Plaintiff submitted a request for medical treatment on December 25, 2005. Defendant Monroe
scheduled plaintiff to see defendant Miller. Plaintiff was examined by defendant Miller on
December 29, 2005. The examination revealed no abnormal problems and plaintiff indicated that

he was able to function with a brace on his knee. Plaintiff saw a doctor on January 4, 2006. The doctor ordered pain medication, but plaintiff complains that he should have received the medication for a longer duration. Plaintiff states that defendant Miller ordered plaintiff a seven day supply of pain medication on January 17, 2006. Plaintiff states that defendant Miller told him that he would be scheduled to see Dr. Berhane on January 20, 2006, and an orthopedic specialist would be requested. Plaintiff was not seen by a medical doctor on January 20, 2006. Plaintiff filed a kite and was informed that he was scheduled to see Dr. Berhane on February 10, 2006. Plaintiff alleges that on January 19, 2006, defendant Monroe called him a "fucking idiot" and walked away from his cell. Plaintiff states that when he informed defendant Monroe that he would write a grievance on her for calling him a bad name, she responded that "I guess you just refused your meds" and, according to plaintiff's complaint, she again walked away from his cell. Plaintiff claims that he filed a number of medical kites.

Plaintiff's knee went out again on February 3, 2006, causing it to swell. Plaintiff was examined by defendant Scott. Plaintiff complains that he was not seen by Dr. Berhane on February 10, 2006, and defendant Miller told plaintiff that no more pain medication would be ordered. Plaintiff's knee went out again on February 13, 2006, while he was taking a shower. Plaintiff asserts that he made defendants aware of the poor conditions of the showers, but they did nothing to correct the conditions.

After this incident, plaintiff visited Marquette General Hospital. Plaintiff complains that he was not given his pain medication and his discharge orders were deliberately not followed by nursing staff or by defendant Miller. Plaintiff complains that defendant Salmi walked by his cell and picked up two medical kites on February 15, 2006. Plaintiff told her that he was in a great amount of pain, but she allegedly failed to perform her duties. Plaintiff alleges that defendant Miller

called him out on February 16, 2006, to explain plaintiff's medical condition. Plaintiff states that defendant Miller told him that he could not be treated at the prison and that plaintiff could not have crutches while confined in administrative segregation. Plaintiff sent a number of kites complaining of numbness and tingling in his legs and that his back was hurting. Plaintiff was told to take Tylenol.

Plaintiff was seen by Dr. Berhane on March 15, 2006. Dr. Berhane told plaintiff that she would order a cane, a shower chair, pain medication, and ice, and recommend that plaintiff see an orthopedic specialist. Plaintiff alleges that defendant Monroe denied him ice on March 16 and on March 17. Plaintiff filed a kite on March 18, complaining that he did not receive pain medication. The response indicated that there was a problem with Dr. Berhane's orders that needed to first be corrected. After plaintiff complained again on March 20, Nurse Galloway responded that she had seen plaintiff three times and had given him Tylenol, ice and prednisone. Nurse Galloway was still waiting for clarification on the Tylenol order and indicated that the ice was for the acute injury. Plaintiff complained on March 23 that he had not received the cane that Dr. Berhane had ordered. Plaintiff continued to file kites claiming he needed more medical attention. On April 5, 2006, plaintiff was taken to Marquette General Hospital for an MRI on his knee. Plaintiff was diagnosed with having chondromalacia. Plaintiff states that his knee went out again on April 8, 2006, and he did not receive proper assistance. Plaintiff alleges that he was taken to the hospital, but on the way the officer slammed the brakes of the van which caused plaintiff to be thrown out of his wheel chair. Plaintiff asserts that the officer was unprofessional. At the hospital, the doctor ordered a nurse to give plaintiff a shot to relax him. Plaintiff alleges that the officers told the doctor that plaintiff was faking. Plaintiff received a CAT scan and was returned to the emergency room. Plaintiff was then taken back to the prison. Plaintiff continued to complain about his medical condition and was told

by defendant Miller that he could not handle plaintiff's back condition. Plaintiff received a knee brace, but complains that he is still having problems with both his left knee and back.

Defendants have filed a motion for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff has asserted the defendants, public employees, violated the Americans with Disabilities Act (ADA), 42 U.S.C. 12101 *et seq*. The ADA does not allow public employee individual capacity lawsuits, but rather a public employee must be sued in their official capacity under the ADA. *Everson v. Leis*, 556 F.3d 484, 501, n. 7 (6th Cir. 2009). Plaintiff cannot bring a claim for monetary damages against these defendants in their official capacities. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity, in this case, the Michigan Department of Corrections, and is barred by the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Because plaintiff was transferred to a different prison, he cannot bring a claim for injunctive relief against these defendants. Although Eleventh Amendment immunity does not bar injunctive relief against a state official, *see Ex Parte Young*, 209 U.S. 123, 159-60 (1908), such a request is moot because plaintiff has been transferred to a different prison. *Cf. Booth v. Churner*, 121 S. Ct. 1819, 1822 (2001) (transfer to another institution moots claims for injunctive relief.)

Plaintiff claims that he received inadequate medical care for his knee injury. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. CONST. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also, Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff complains that he received improper medical care for his knee injury. Defendants clearly provided plaintiff with treatment. However, plaintiff believes that he should have received better treatment and that he should no longer suffer with knee and back pain. Defendant Monroe stated that she answered plaintiff's medical kite on December 27, 2005, and informed plaintiff that he would see a nurse on December 29, 2005. That examination showed no abnormal

findings. On January 19, 2006, defendant Monroe states that she delivered medication to plaintiff's cell but he stated "shut my slot. I don't want it." Defendant Monroe states that she did not call plaintiff any names. Defendant Monroe responded to a number of kites written by plaintiff, including the kite for a cane. Defendant Monroe informed plaintiff that he had already received a cane. Defendant Monroe also informed plaintiff that CMS denied an orthopedic consult, but ordered an MRI. Defendant Salmi states that when she picked up two kites from plaintiff on February 15, 2006, she explained to plaintiff in detail that he was on the clinic list to see the medical service provider the next day and that he would receive his medication as soon as it arrived from the pharmacy.

Defendant Salmi responded to a kite requesting exactly what Dr. Berhane ordered for plaintiff. Defendant Salmi responded to a number of plaintiff's medical kites, and further indicates that there existed no evidence of neurological injury to plaintiff. Health Unit Manager Ruby Cheatham states that she does not recall plaintiff complaining of the conditions of the showers and his cell. Defendant Cheatham stated that plaintiff had "considerable access to health care staff on a regular basis." Defendant Scott responded to a number of plaintiff's medical kites, scheduled plaintiff for medical examinations, and examined plaintiff on February 3, 2006. At that time, defendant Scott advised plaintiff to elevate his knee and use a cold compress.

Defendant RUM Bauman was not employed at the prison at the time of the alleged incidents. Defendant Salo was assigned to the Cedar Unit at the time of the alleged incidents and did not come into contact with plaintiff. Defendant Girth, the Assistant Resident Unit Supervisor of the Aspen Unit, states that she was aware that plaintiff had made complaints of a knee problem. Plaintiff had asked her for a transfer to another facility or a release to general population. Those requests were denied. Defendant McBurney states that he responded to a grievance written by

plaintiff about handrails and emergency call buttons. Defendant McBurney indicated that plaintiff was medically cleared for administrative segregation and there existed no medical requirement for hand rails or emergency call buttons.

Defendant Miller was more involved in plaintiff's health care. Despite plaintiff's elevation of defendant Miller's status to "the facility doctor," defendant Miller maintains that he has never been a doctor. Defendant Miller is a physician assistant and is licensed in the State of Michigan. Defendant Miller treated plaintiff on numerous occasions. Plaintiff's knee "had gone out" on various occasions and defendant Miller examined plaintiff. In January 2006, defendant Miller assessed that plaintiff suffered a knee strain and ordered Ultram for several days. Defendant Miller requested that Dr. Berhane see plaintiff. On January 17, 2006, when defendant Miller examined plaintiff, he continued the Ultram for four days until plaintiff could be seen by Dr. Berhane, requested that a determination be made if an "Ortho" consult was appropriate, and ordered an x-ray. The x-ray revealed an "extremely minimal narrowing of the medial joint" and "no definite acute abnormality." Plaintiff requested a refill on his Ultram prescription on February 7, 2006. Defendant Scott told plaintiff that he could not refill the prescription because he had already exceeded the number of times that he was supposed to order the prescription for plaintiff.

Defendant Miller assessed plaintiff after he returned from the hospital emergency room on February 14, 2006. The plan at that time was to wait for the appropriate reports before continuing medication. The hospital x-ray showed no significant findings. On February 27, 2006, defendant Miller declined plaintiff's request for Ultram and Flexeril because he did not believe plaintiff needed the medications. Defendant Miller noted that he would order Tylenol and would request an orthopedic consult to verify plaintiff's complaints. On March 2, 2006, defendant Miller told plaintiff that he did all he could and was awaiting word on the request for the orthopedic consult.

Plaintiff continued to be evaluated and assessed by Dr. Berhane and other medical staff. Plaintiff complained of knee and back pain. On April 6, 2006, an MRI showed a "small effusion with chondromalacia." The assessment was a resolved back strain and chronic left knee pain which could be treated with Tylenol. On May 5, 2006, it was determined that plaintiff did not need to see an orthopedic doctor. On September 19, 2006, defendant Miller ordered plaintiff a left knee brace, a splint, and a cane.

It is clear that plaintiff received significant treatment and care for his medical complaints. Plaintiff is not satisfied with the results, but that is not sufficient to support an Eighth Amendment claim. In the opinion of the undersigned, defendants provided reasonable and adequate care for plaintiff's medical complaints. The record shows that defendants were responsive to plaintiff's requests. Moreover, plaintiff has not shown that any defendant acted with deliberate indifference that could support a violation of the Eighth Amendment.

Defendants alternatively move for dismissal based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to defendants' motions for summary judgment. Accordingly, it is recommended that defendants' motions for summary judgment (Docket #161 and #201) be granted and that defendants Monroe, Miller, Salmi, Cheatham, Scott, Bauman, Girth, Salo and McBurney be dismissed. It is recommended that defendant Bott be dismissed for failure to effectuate service. Only defendant Nowaki, who is in default, would remain as a defendant.[1] It is recommended that default judgment be entered against defendant Nowaki.

It is further recommended that plaintiff's motion for sanctions (Docket #210), plaintiff's motion for extension of time (Docket #217), and defendants' motion for a continuance (Docket #220) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR

---

[1]The allegations against defendant Nowaki include a lack of positive response to plaintiff's complaint that his cell lacked an emergency call button and that defendant Nowaki told medical personal that plaintiff was "faking it."

72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

     /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   September 22, 2009